IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MARVIN THOMAS, | ) | |
| | ) | |
| Plaintiff, | ) | No. 17 C 4233 |
| | ) | |
| v. | ) | |
| | ) | Hon. Virginia M. Kendall |
| | ) | |
| COOK COUNTY SHERIFF THOMAS DART, et al. | ) ) | |
| | ) | |
| Defendants. | ) ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Marvin Thomas filed suit against Cook County Sheriff Thomas Dart, Cook County, Unknown Correctional Officers and Unknown Medical Personnel alleging that while housed in Cook County Correctional Facility in 2015, he suffered from inadequate health care and suffered physical injuries when correctional officers failed to protect him from an inmate who had threatened to harm him. (Dkt. 12). Specifically, Plaintiff alleges claims pursuant to 42 U.S.C. § 1983 against the Unknown Correctional Officers and Unknown Medical Personnel (Counts I and II), a claim against Defendant Dart in his official capacity for violating the American Disabilities Act (ADA) and Section 504 of the Rehabilitation Act (Count III), and a Section 1983 claim against Defendant Cook County (Count IV). (*Id.*). Defendants Dart and Cook County ("Defendants") filed a Motion to Dismiss Counts III and IV pursuant to Federal Rule of Civil Procedure 12(b)(6). (Dkt. 31). For the reasons stated below, Defendants' Motion to Dismiss (Dkt. 31) is granted.

**BACKGROUND**

The facts set forth in Plaintiff's Complaint are accepted as true for the purpose of reviewing Defendant's Motion to Dismiss. *Heyde v. Pittenger*, 633 F.3d 512, 516 (7th Cir. 2011).

1

At some time in or before 2009, Plaintiff got into an altercation with another man at a bar while he was on active duty as a member of the United States Air Force. (Dkt. 12 at ¶ 11). During the altercation the other man cut Plaintiff, who was unarmed, with a knife. (*Id.*). Plaintiff required numerous stitches to close his wounds, was put on light duty when he returned to work and has suffered recurring nightmares about the incident ever since. (*Id.*). In 2009, Plaintiff was diagnosed with PTSD and depression at the Jesse Brown VA Medical Center. (*Id.*).

On June 20, 2015, Plaintiff was involved in a car accident in which another car rear-ended Plaintiff's car causing him to then hit other cars and eventually the median wall. (*Id.* at ¶ 12). Plaintiff was rendered unconscious and taken to John Stroger hospital. (*Id.*) When he regained consciousness, Plaintiff refused to take a blood or breathalyzer test. (*Id.*) Plaintiff was then read his Miranda rights, given minimal medical treatment, taken to Cermak Health Center and charged with Aggravated Driving Under the Influence because he refused to take the tests. (*Id.*).

Plaintiff was detained at the Cook County Correctional Facility (CCCF). (*Id.* at ¶ 13). On June 21, 2015, Plaintiff told the CCCF staff of his disability (presumably, PTSD) and that he was in pain from the car accident but the staff denied him medication to relieve his pain. (*Id.*). While at CCCF, Plaintiff was housed in a cell without heat and given only two woolen blankets for warmth. (*Id.*). Plaintiff is allergic to wool and developed pain in his chest, body aches, light-headedness, dizziness, fever and chills in reaction to the blankets. (*Id.*). The staff denied Plaintiff's medical requests. (*Id.*).

Plaintiff was released on July 5, 2018, after the arresting officers failed to appear for his court date. (*Id.*). After his release, Plaintiff went to the hospital and was diagnosed with pneumonia. (*Id.* at ¶ 14). On September 1, 2015, Plaintiff was indicted and reincarcerated at CCCF. (*Id.* at ¶ 15).

On October 3, 2015, Plaintiff injured his arm and was sent to Stroger hospital. (*Id.* at ¶ 16). While at Stroger, he was given food to which he was allergic and which caused his face, lips and arms to swell, his hips to ache and his breath to become labored. (*Id.*). His symptoms were addressed at Stroger but when he returned to CCCF, he was forced to sleep on the cell floor for five nights causing him increased pain and suffering. (*Id.*).

As early as October 14, 2015, Plaintiff advised the commanding officers and sergeant where he was housed that he had received threats from another inmate. (*Id.* at ¶ 17). The officers and sergeant assured Plaintiff they would change his cell but never did. (*Id.*) Plaintiff was concerned by these threats because the original source of his PTSD was from an attack by an armed individual. (*Id.*). A few months later on January 5, 2016, an inmate hit Plaintiff in the mouth, unprovoked, causing Plaintiff to suffer a wound to his lip and a dislocated shoulder. (*Id.*). The staff at Cermak Health Center gave him five stitches to close the wound on his lip. (*Id.*). While being stitched, Plaintiff told the staff about his shoulder injury but it was never treated. (*Id.*). Between October 14, 2015 and January 5, 2016 and beyond, Plaintiff suffered increased anxiety because of the threat to his safety. (*Id.* at ¶ 18).

After the January 5 altercation, Plaintiff was put "in the hole" for two weeks and then into a maximum-security dorm where he had no running water in his cell. (*Id.* at ¶ 19). Plaintiff's stitches became infected because he was unable to keep them clean without running water. (*Id.*). Plaintiff made numerous requests for his stitches to be removed. (*Id.*) When a nurse finally attempted to remove the stitches, the skin on his lip had begun to grow over the stitches so that the nurse was only able to remove three of the five stitches. (*Id.*). A doctor had to be called in to remove the other two stitches. (*Id.*) When removing the remaining two stitches, the doctor

3

commented that the stitches had been put in improperly. (*Id.*) The improperly inserted stitches left a disfiguring lump on Plaintiff's lip. (*Id.*).

After being detained for seven months, Plaintiff pleaded guilty to Aggravated Driving Under the Influence and was released. (*Id.* at ¶ 19). After he was released, Plaintiff had surgery to correct the disfiguration on his lip and to correct the injury to his shoulder. (*Id.*). On June 5, 2017, Plaintiff filed his Complaint alleging various claims related to his medical treatment while detained at CCCF. (Dkt. 1). Plaintiff seeks relief in the form of an order declaring Defendants' conduct unconstitutional and in violation of the ADA and the Rehabilitation Act, an award of compensatory and punitive damages against Defendants in the amount of $2,000,000, and reasonable fees and costs. (Dkt. 12).

## LEGAL STANDARD

To survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 566 U.S. 662, 678 (2009). The factual allegations "must be enough to raise a right to relief above the speculative level." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (quoting *Twombly*, 550 U.S. at 555). At the 12(b)(6) stage, the Court construes the complaint in the light most favorable to the nonmoving party, accepts all well-pleaded facts as true, and draws all inferences in his favor. *Heyde*, 633 F.3d at 516. However, "[l]egal conclusions and conclusory allegations merely reciting the elements of the claim are not entitled to this presumption of truth." *McCauley*, 671 F.3d at 616 (citing *Iqbal*, 566 U.S. at 678).

4

**DISCUSSION**

Plaintiff's Complaint alleges multiple unrelated claims against multiple defendants. Defendants move to dismiss Counts III against Defendant Dart and IV against the County pursuant to Federal Rule of Civil Procedure 12(b)(6). The Court addresses these counts first and then addresses Plaintiff's unrelated claims generally.

**I.    Count III against Defendant Sheriff Dart**

Count III of the Complaint alleges claims for violations of the ADA and Section 504 of the Rehabilitation Act against Defendant Sheriff Dart related to Plaintiff's time spent in solitary confinement. (Dkt. 12 at ¶¶ 27-28). Specifically, the Complaint alleges that Dart is the final policymaker responsible for all policies and practices of the Cook County Department of Corrections and is liable in his official capacity for "having guidelines for putting inmates into solitary confinement which affect persons with disabilities in ways that are more harmful than to health[y] inmates" in violation of the ADA and the Rehabilitation Act. (*Id.* at ¶¶ 7, 28). Defendants argue in their Motion to Dismiss that the Complaint fails to state a claim that Defendant Dart violated either the ADA or 42 U.S.C. § 1983.

**A.    ADA and Rehabilitation Act Claims**

"Title II of the ADA protects detainees with qualified disabilities against discrimination by a public entity[] and requires jails to reasonably accommodate their disabilities." *Boston v. Dart*, No. 14 CV 8680, 2015 WL 4638044, at *2 (N.D. Ill. Aug. 4, 2015) (citing *Pennsylvania Dep't of Corr. v. Yeskey*, 524 U.S. 206, 209 (1998)). To establish a violation of Title II of the ADA, Plaintiff must show that (1) he is a qualified individual with a disability, (2) a public entity denied him the benefits of its services, programs, or activities or otherwise subjected him to discrimination, and (3) the denial or discrimination occurred because of his disability." *Wagoner v. Lemmon*, 778 F.3d

586, 592 (7th Cir. 2015). Defendants argue that Plaintiff has failed to sufficiently allege any of these elements. (Dkt. 31 at 7).

Plaintiff sufficiently alleged the first element. The ADA defines a "disability" as "a physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(2). "Major life activities" is defined to include caring for oneself, sleeping, concentrating, working, etc. *Id.* Plaintiff alleges that as a result of the bar fight he was in while on active duty, he was diagnosed with PTSD and has suffered recurring nightmares ever since. Viewing these facts in the light most favorable to Plaintiff, he has sufficiently alleged that his PTSD substantially limits his ability to sleep and, therefore, that he has a disability under the ADA. *See* 29 C.F.R. § 1630.2 (When assessing ADA claim, "it should easily be concluded that post-traumatic stress disorder . . . substantially limit[s] brain function" and "may substantially limit additional major life activities.").

The Court looks next to the second and third elements: that the jail denied him the benefits of its services, programs, or activities or otherwise subjected him to discrimination because of his disability. The Complaint alleges that Defendant Dart's guidelines for placing inmates in solitary confinement causes more harm to disabled inmates than non-disabled inmates. In his Response to Defendant's Motion to Dismiss, Plaintiff clarified that his ADA claim is based on a failure to accommodate theory. "Refusing to make reasonable accommodations is tantamount to denying access." *Jaros v. Illinois Dep't of Corr.*, 684 F.3d 667, 672 (7th Cir. 2012). Therefore, Plaintiff need not show intentional discrimination or disparate impact to state his reasonable accommodation claim under Title II of the ADA. *Wisconsin Cmty. Servs., Inc. v. City of Milwaukee*, 465 F.3d 737, 753 (7th Cir. 2006) ("[A] Title II claim under the ADA may be established by evidence that (1) the defendant intentionally acted on the basis of the disability, (2)

6

the defendant refused to provide a reasonable modification, or (3) the defendant's rule disproportionally impacts disabled people.") (internal quotations omitted); *see also, e.g. Estate of Robey by Robey v. City of Chicago*, No. 17-CV-2378, 2018 WL 688316, at *6 (N.D. Ill. Feb. 2, 2018) ("[I]t is possible to demonstrate discrimination on the basis of disability by a defendant's refusal to make a reasonable accommodation."). He need only allege that "he was denied the benefit of services, programs, or activities at the prison facility because his disability was not reasonably accommodated." *Boston*, 2015 WL 4638044, at *2 (citing *Yeskey*, 524 U.S. at 209).

In his response brief, Plaintiff explains the failure to accommodate theory as follows: "Despite knowing of his condition [PTSD], jail personnel placed the plaintiff in solitary confinement with no accommodation for his condition" and "[a]s a result, the plaintiff's condition was exacerbated" and "he suffered more pain and punishment in solitary confinement with no accommodation than a non-disabled prisoner would have suffered in the same cell for the same length of time." (Dkt. 39 at 3). As an initial matter, allegations such as these that are raised for the first time in a response brief and are outside the pleadings are generally not considered on a motion to dismiss. *See* Fed. R. Civ. P. 12(b). However, a plaintiff opposing a Rule 12(b)(6) motion or appealing a dismissal "has much more flexibility" and "may elaborate on his factual allegations" in the complaint. *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012). But this flexibility is not without limitation. The Court considers materials or elaborations disclosed for the first time in a response brief only "so long as the new elaborations are consistent with the pleadings." *Id.*; *see also Heng v. Heavner, Beyers & Mihlar, LLC*, 849 F.3d 348, 354 (7th Cir. 2017) (affirming grant of motion to strike exhibit to plaintiff's response brief that was not material to or consistent with the complaint). Likewise, the Court considers a new theory presented in an opposing brief only if it is supported by allegations in the complaint. *See Epstein v. Epstein*,

7

843 F.3d 1147, 1151 n.5 (7th Cir. 2016) (rejecting theory presented for the first time on appeal where it was unsupported by the allegations in the amended complaint).

Here, the failure to accommodate theory raised in Plaintiff's response brief is largely consistent with the allegations in Claim III of the Complaint in that both allege the solitary confinement as practiced under Sheriff Dart's guidelines affect disabled inmates in a more harmful way than it does non-disabled prisoners. However, Plaintiff's allegation in his response brief that he personally suffered any injury related to his disability as a result of his time in solitary confinement appears nowhere in the Complaint.

In fact, the Complaint mentions solitary confinement only once when alleging that "[a]fter the altercation, the plaintiff was put in the hole for two weeks." (Dkt 12 at ¶ 19). Before and after those two weeks, Plaintiff alleges he was housed in a dormitory setting—in "Division 2, dorm 2, W house" before the altercation and in "a maximum security dorm, Division 10/3C" after being released from solitary confinement. (*Id.* at ¶¶ 17, 19). The Complaint then fails to allege that any injuries related to his disability arose from his two weeks in solitary confinement. Rather, Plaintiff alleges that his increased anxiety which exacerbated his PTSD was caused by the correctional officers' alleged failure to protect him from the threats of his fellow inmate, not from his time in solitary confinement. (*Id.* at ¶¶ 18, 21). The only injury alleged in the Complaint that can possibly be tied to Plaintiff's time in solitary confinement is the alleged infection to his lip due to the lack of running water. Specifically, Plaintiff alleges that "[b]ecause there was no running water in the plaintiff's new cell, he was unable to keep his stitches clean, and they became infected." (*Id.* at ¶ 17).[1] No allegation links any other alleged injury to his two weeks in solitary confinement.

---

[1] Although not clear from the Complaint to which cell this statement refers, when read in the light most favorable to Plaintiff, the Court can reasonably infer that the "new cell" refers to Plaintiff's cell in solitary confinement cell where he was placed after receiving stitches.

8

Plaintiff at best plausibly alleges that solitary confinement led to his stitches becoming infected. But ultimately the Complaint is devoid of any factual support for the allegation raised for the first time in Plaintiff's response brief that Plaintiff's PTSD was exacerbated by the lack of accommodations in solitary confinement and that he suffered more pain and punishment than a non-disabled prisoner would have as a result. Therefore, the Court will not consider the allegations related to the effects of solitary confinement on Plaintiff's PTSD in deciding Defendants' Motion to Dismiss.

Even if these allegations were considered, however, Plaintiff's failure to accommodate theory would fail because Plaintiff fails to allege he was denied the benefit of any service, program or activity, let alone that he was denied such benefit because he was placed in solitary confinement without accommodation for his PTSD. The ADA was designed to ensure that disabled individuals are not denied access to the benefits of services based on their disability. *See* 42 U.S.C. §§ 12101, 12132. The Supreme Court has defined "services, programs, or activities" to include "recreational, medical, educational, and vocational prison programs." *Simmons v. Godinez*, No. 16 C 4501, 2017 WL 3568408, at *6 (N.D. Ill. Aug. 16, 2017) (citing *Yeskey*, 524 U.S. at 210); *see also, e.g., Jaros*, 684 F.3d at 672 (access to meals and showers on the same basis as other inmates); *Love v. Westville Corr. Ctr.*, 103 F.3d 558, 560 (7th Cir. 1996) (Sunday church services and group substance abuse program constituted "services, programs or activities" for purpose of ADA claim); *Holmes v. Godinez*, 311 F.R.D. 177, 227 (N.D. Ill. 2015) ("[J]ob assignment program constitutes 'services, programs, or activities' under Title II of the ADA."). On its face, Plaintiff's claim appears to allege he was denied access to the same experience in solitary confinement that a non-disabled inmate would have had. But neither solitary confinement nor a specific experience while in solitary confinement is in itself a "service, program or activity" under the ADA. On the other hand, access

9

to medicine or medical care or to a mental health program while in solitary confinement would constitute such service, program or activity. *See, e.g., Corbin v. Indiana*, No. 3:16-CV- 602-PPS/MGG, 2018 WL 1920711, at *3 (N.D. Ind. Apr. 23, 2018) (claim that plaintiff "was denied basic psychological care and services while he was housed in solitary confinement and that other inmates were afforded such services" plausibly alleged violation of the ADA); *Pegues v. Coe*, No. 16-CV-239-JPG, 2016 WL 3055258, at *8 (S.D. Ill. May 31, 2016) (claim that defendants refused to provide plaintiff who was unable to walk with a wheelchair while in segregation, thereby "exclud[ing] him from participation in physical activity, and the ability to meet his personal hygiene needs, which should be provided to all inmates" plausibly alleged violation of the ADA); *Wagoner*, 778 F.3d at 593 (recognizing that "wheelchair itself is a service under [ADA] because it is necessary to accommodate [plaintiff's] paraplegia"). Perhaps if the Complaint had specified the type of reasonable accommodation Plaintiff sought for his PTSD, the Court could infer what, if any, service, program or activity Plaintiff was unable to access while in solitary confinement. But Plaintiff simply fails to allege any facts from which the Court could make such an inference. Therefore, Plaintiff's ADA claim in Count III is dismissed.

Although Defendants fail to address Plaintiff's Rehabilitation Act claim in their Motion to Dismiss, the claim necessarily fails for the same reasons as the ADA claim. The Rehabilitation Act "is functionally identical" to the ADA, except that the Rehabilitation Act requires one additional element: that the relevant public entity accepts federal funds. *Id.* at 592; *see also Jaros v. Illinois Dep't of Corr.*, 684 F.3d 667, 671 (7th Cir. 2012). Plaintiff fails to allege that Cook County Department of Corrections receives any federal funding or any facts from which the Court could infer that it does. This in itself may be grounds for dismissal. *See, e.g., Bramlett v. Dart*, No. 14 C 5939, 2015 WL 4148711, at *3 (N.D. Ill. July 9, 2015) (recognizing that failure to allege

that Defendants Cook County and Sheriff Dart received federal funds "may provide a basis for dismissing the Rehab Act claim"); *Garfield v. Cook Cty.*, No. 08 C 6657, 2009 WL 4015553, at *1 (N.D. Ill. Nov. 19, 2009) (dismissing Rehabilitation Act claim against Cook County where plaintiff "ma[de] no mention of or allusion to federal funding of any sort"). Regardless, the Court dismisses the Rehabilitation Act claim in Count III for the same reasons already discussed with regard to the ADA claim.

B.  **Section 1983 Claim**

Count III—the only claim asserted against Defendant Dart—alleges *only* violations of the ADA and Rehabilitation Act; it fails to even mention Section 1983, let alone allege that Defendant Dart violated Section 1983. (*See id.* at ¶¶ 27-28). Yet Defendants moved to dismiss Count III as a Section 1983 claim and Plaintiff argued in response that he had sufficiently pled such claim. The Court construes Count III as also alleging a Section 1983 claim against Defendant Dart and addresses that claim as well.

To state a claim under Section 1983, Plaintiff must allege that he was deprived of a constitutional right or statuary right and that the deprivation was caused by a person or persons acting under color of state law. *Kramer v. Vill. of N. Fond du Lac*, 384 F.3d 856, 861 (7th Cir. 2004). Where a plaintiff's Section 1983 claim is based on a statutory right, that claim is precluded if Congress provided a comprehensive remedial scheme in the statute itself. *See Discovery House, Inc. v. Consol. City of Indianapolis*, 319 F.3d 277, 281 (7th Cir. 2003) ("When the violation is of a statutory right, a plaintiff runs the risk that a court might decide that the statutory scheme in one way or another forecloses § 1983 relief."); (citing *Wright v. City of Roanoke Redevelopment & Hous. Auth.*, 479 U.S. 418, 423 (1987)); *see also, e.g., Holmes*, 311 F.R.D. at 230 ("[A] comprehensive remedial scheme set forth by Congress may preclude § 1983 relief to remedy

11

violations of the statute.") (citing *Middlesex Cty. Sewerage Auth. v. Nat'l Sea Clammers Ass'n*, 453 U.S. 1, 20 (1981)). Several courts have held that the enforcement mechanisms in the ADA and Rehabilitation Act are sufficiently comprehensive to preclude actions under Section 1983 for violation of either statute. *See, e.g., Sneed v. City of Harvey, Ill.*, 598 F. App'x 442, 446 n.1 (7th Cir. 2015) (Plaintiff "could not invoke § 1983 to expand or supplant the ADA's comprehensive remedial scheme."); *Jones v. Reg'l Transp. Auth.*, No. 11 C 04924, 2012 WL 2905797, at *6 (N.D. Ill. July 16, 2012) (Plaintiff "cannot rely on § 1983 to bring a claim . . . because (1) no constitutional-right violation is alleged, and (2) Congress has established a comprehensive remedial scheme that forecloses reliance on § 1983 for remedying ADA or Rehabilitation Act violations."). Therefore, to the extent Count III alleges a claim under Section 1983 that is identical to that alleged under the ADA and Rehabilitation Act, *i.e.* based on the alleged failure to provide Plaintiff with accommodations for his PTSD while in solitary confinement, such claim is foreclosed and dismissed with prejudice.

But Plaintiff asserts a different basis for his Section 1983 against Defendant Dart in his Response to Defendants' Motion to Dismiss. Plaintiff sues Defendant Dart in his official capacity. A Section 1983 claim against a government employee in his official capacity is treated as a claim against the government entity for which he works—here, Cook County. *See Grieveson v. Anderson*, 538 F.3d 763, 771 (7th Cir. 2008). The County cannot be liable under Section 1983 unless the alleged unconstitutional act is caused by: "(1) an official policy adopted and promulgated by its officers; (2) a governmental practice or custom that, although not officially authorized, is widespread and well settled; or (3) an official with final policy-making authority." *Thomas v. Cook Cty. Sheriff's Dep't*, 604 F.3d 293, 303 (7th Cir. 2010) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978)).

In his response brief, Plaintiff asserts that he brings a Section 1983 claim against Defendant Dart under the second, "widespread practices" theory based on the jails' alleged continued use of uninhabitable solitary confinement cells. Specifically, the response brief states that "the Sheriff has allowed the use of uninhabitable solitary confinement cells for years," "the cell plaintiff was housed in was an uninhabitable solitary confinement cell because it had no running water," "plaintiff alleges he was not the first nor the last inmate to inhabit that cell while it was in that condition," and "there were other solitary confinement cells that were rendered uninhabitable for other reasons, but that were in constant use." (Dkt. 39 at 2). Once again, the majority of these assertions were not alleged in the Complaint. The *only* allegation that appears in the Complaint is that Plaintiff's solitary confinement cell had no running water. (*See* Dkt. 12 at ¶ 19). The allegations related to Plaintiff's solitary confinement cell before and after he was in it and the allegations related to the condition or use of any other solitary confinement cell are in no way consistent with the pleadings. Therefore, the Court will not consider them. *See Geinosky*, 675 F.3d at 745 n.1 (a party opposing a 12(b)(6) motion may elaborate on his factual allegations only "so long as the new elaborations are consistent with the pleadings).

Even if these allegations were considered, Plaintiff's "widespread practices" claim as alleged in his response brief would fail. To prevail on a "widespread practices" claim, Plaintiff must show that the County engaged in a practice "so permanent and well settled as to constitute a custom or usage with the force of law." *Wragg v. Vill. of Thornton*, 604 F.3d 464, 467 (7th Cir. 2010). Plaintiff must allege facts showing that at least more than one instance of the alleged conduct occurred to establish that a practice in fact exists and that his placement in the allegedly uninhabitable solitary confinement cell was not merely a random event. *See Calhoun v. Ramsey*, 408 F.3d 375, 380 (7th Cir. 2005). Here, Plaintiff fails to identify any other incident in which he

13

or another inmate was placed in an uninhabitable solitary confinement cell. Plaintiff's assertions that Defendant Dart has used such cells "for years" or that they are "in constant use" are conclusory; Plaintiff provides no factual support for these allegations in his response brief or otherwise. *See McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) ("conclusory allegations merely reciting the elements of the claim are not entitled to this presumption of truth" when assessing a motion to dismiss); *see also, e.g., Annan v. Vill. of Romeoville*, No. 12 C 3577, 2013 WL 673484, at *6 (N.D. Ill. Feb. 25, 2013) (dismissing *Monell* claim for failing to allege more than conclusory assertions to show a policy or widespread practice caused the alleged constitutional injuries). Therefore, Plaintiff's Section 1983 claim against Defendant Dart—to the extent he has alleged one at all and even considering the factual allegations improperly asserted for the first time in his response brief—is dismissed.

## II. Defendant Cook County

With regard to Defendant Cook County, Plaintiff claims the County is liable under Section 1983 for injuries to his lip. (*Id.* at ¶ 30). Specifically, Plaintiff alleges the County violated Section 1983 by "confining the plaintiff in a cell with no running water which resulted in the plaintiff not being able to clean stitches he had just gotten to repair a lacerated lip, resulting in the wound becoming infected and the lip disfigured." (*Id.*). Again, the County can only be liable under Section 1983 if the alleged constitutional violation was caused by an official policy, a widespread practice or an official with final policy-making authority. *Thomas*, 604 F.3d at 303.

Plaintiff has failed to establish a valid *Monell* claim against the County under any of these three theories. First, Plaintiff fails to identify any official policy that is unconstitutional when enforced. *See Calhoun*, 408 F.3d at 379 (to prevail under an express policy theory, plaintiff must identify specific language in an official policy that explicitly violates a person's constitutional

14

rights). Second, Plaintiff fails to plead a widespread practice claim because he fails to identify any other instance in which he or another inmate was confined in a cell without running water. *Id. at* 380. Finally, Plaintiff fails to allege that any official with final policy-making authority caused him to be placed in a cell without running water. The Complaint alleges that Defendant Dart is "the final policymaker responsible for all policies and practices" of the Cook County Jail but then mentions only one policy for which Dart was allegedly responsible: the "guidelines for putting inmates into solitary confinement which affect persons with disabilities in ways that are more harmful than to healthy inmates." (Dkt. 12 at ¶ 28). But these guidelines are alleged to have exacerbated Plaintiff's PTSD; they are in no way related to the lack of running water or eventual infection to Plaintiff's lip. The Complaint fails to allege that Defendant Dart or any other official had a policy that caused Plaintiff's placement in a solitary confinement cell without running water.

Therefore, Plaintiff's Section 1983 claim against the County in Count IV is also dismissed without prejudice.

### III. Plaintiff's Unrelated Claims against Multiple Defendants

Under Federal Rule of Civil Procedure 20(a), a plaintiff may join defendants in one action "if there is asserted against them jointly, severally, or in the alternative, any right to relief in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences" and "any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2). In other words, joinder of parties is limited to claims arising from the same transaction or series of related transactions. *Wheeler v. Wexford Health Sources, Inc.*, 689 F.3d 680, 683 (7th Cir. 2012). Plaintiffs may not use a single complaint to bring unrelated claims against multiple defendants. *Owens v. Evans*, 878 F.3d 559, 566 (7th Cir. 2017). "Unrelated claims against different defendants belong in different suits." *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007)

("A suit complaining that A defrauded the plaintiff, B defamed him, C punched him, D failed to pay a debt, and E infringed his copyright, all in different transactions—should be rejected . . .").

Plaintiff's Complaint alleges claims arising from three separate sets of facts: (1) that he had an allergic reaction to woolen blankets and contracted pneumonia during his first detention between June 20, 2015 and July 15, 2015; (2) that he had an allergic reaction to food at Stroger Hospital and was forced to sleep on a cell floor after being detained again in October 2015; and (3) that the correctional officers failed to protect him against another inmate causing him to suffer injuries to his lip and shoulder that were improperly treated, then placed him in a solitary confinement causing his PTSD to be exacerbated, and placed him in a cell without water leading to the infection of his stitched lip. None of these sets of facts is related to another. Furthermore, Plaintiff fails to identify which defendants participated in which events; he alleges only generally that "unknown" correctional officers and medical personnel engaged in the alleged conduct. In fact, the only defendants identified are Defendant Dart and the County, neither of which could have personally participated in any of the events alleged. Where, as here, a plaintiff fails to show that the named defendants participated in the same transactions or occurrences or that a question of fact is "common to all defendants," the Court must reject the Complaint as filed "either by severing the action into separate lawsuits or by dismissing the improperly joined defendants." *Owens v. Hinsley*, 635 F.3d 950, 952 (7th Cir. 2011) (citing Fed. R. Civ. P. 21); *see also George*, 507 F.3d at 607; *Wheeler*, 689 F.3d at 683.

Accordingly, Plaintiff is given two weeks to determine which of the claims alleged in his Complaint he will proceed with in this case. He may proceed on claims arising from only one of the sets of facts listed above; the Court will dismiss without prejudice all claims arising from the other two, unrelated sets of facts so that Plaintiff may bring those claims in separately filed suits

if he wishes to do so. Plaintiff must file an amended pleading by September 4, 2018 that restates his chosen claims based on the guidance provided in this Order, in particular showing the specific acts taken by specific defendants.

## **CONCLUSION**

For the reasons stated above, the Court grants Defendants' Motion to Dismiss. (Dkt. 31). Plaintiff's Complaint (Dkt. 12) is dismissed without prejudice. Plaintiff must file an amended pleading that comports with the guidance provided by the Court in this Order by September 4, 2018.

 _____
 Hon. Virginia M. Kendall
 United States District Judge

Date: August 22, 2018