# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| MARVIN THOMAS, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> ) <br> COOK COUNTY SHERIFF THOMAS ) <br> DART, et al. ) <br> ) <br> Defendants. ) <br> ) | No. 17 C 4233 <br><br> Hon. Virginia M. Kendall |

## MEMORANDUM OPINION AND ORDER

Plaintiff Marvin Thomas brings this action against Cook County Sheriff Thomas Dart, Cook County, and Unknown Correctional Officers. Thomas brings claims against Sheriff Dart for violations of the Americans with Disabilities Act ("ADA") and Section 504 of the Rehabilitation Act (Count III) and under 42 U.S.C. § 1983 (Count IV), and the same claims against Unknown Correctional Officers—under Section 1983 (Count I), and ADA and the Rehabilitation Act (Count II). The Court dismissed Thomas's initial complaint under Federal Rule of Civil Procedure 12(b)(6) for failing to state a claim for relief. *See Thomas v. Dart*, No. 17 C 4233, 2018 WL 4016315 (N.D. Ill. Aug. 22, 2018). Defendants Dart and Cook County now move to dismiss the claims against them in Thomas's Amended Complaint on the same grounds. Because Thomas's Amended Complaint cures only some of the problems the Court identified in its earlier order dismissing the original complaint, Defendants' Motion to Dismiss [Dkt. 58] is granted in part and denied in part.

1

**BACKGROUND**

Because this is Thomas's second attempt to plead violations of Section 1983, the ADA, and the Rehabilitation Act, the Court presumes that both parties are familiar with the general underlying facts. *See generally Thomas*, 2018 WL 4016315. The following newly-pleaded facts are relevant to the instant motion to dismiss. The Court takes those facts from the Amended Complaint (Dkt. 56) and treats them as true for purposes of this motion. *See Heyde v. Pittenger*, 633 F.3d 512, 516 (7th Cir. 2011).

Though Thomas's Amended Complaint reconfigures which claims are brought against which defendants,[1] the newly-pleaded facts are limited to Paragraphs 17 and 18. Thomas expands upon his original allegations of being placed in solitary confinement after an altercation with another detainee at the Cook County Correctional Facility (CCCF). Specifically, Thomas now alleges that he was placed in solitary confinement with no accommodation for his disability (post-traumatic stress disorder), despite CCCF personnel's knowledge of his disability. (Dkt. 56 ¶ 17.) Thomas now alleges that, while in solitary confinement, he was denied access to counseling or medical attention that would have helped his PTSD and, "as a result, his condition was exacerbated." (*Id.*)

Next, Thomas expands upon his original allegations about the cell he was placed in after his time in solitary confinement. Thomas previously alleged that the next cell lacked running water, which led to stiches in his lip becoming infected because he was unable to clean them. *See Thomas*, 2018 WL 4016315 at *2. Thomas also previously alleged that he made numerous requests to have the stiches removed and that they were not removed until the skin on his lip had

---

[1] *Compare* Dkt. 12 (Count I for violations of Section 1983 against Unknown Correctional Officers; Count II for violations of Section 1983 against Unknown Medical Personnel; Count III for Violations of the ADA and Rehabilitation Act against Dart; and Count IV for violations of Section 1983 against Cook County) *with* Dkt. 56 (counts described above).

begun to grow over the stitches. *Id.* Thomas now alleges that the discomfort he suffered because he was denied medical attention to have his stitches removed in a timely manner, and the fact that he was "still not given access to counseling, contributed to [his] PTSD." (Dkt. 56 ¶ 18.)

Finally, Thomas alleges an incident in the original complaint that is not amended or expanded upon in any way in the Amended Complaint, but is now used for the first time as a basis for Defendant Dart's alleged violations of the ADA and Rehabilitation Act (*see id.* ¶ 26), so the Court will recount that incident here. As early as October 14, 2015, Thomas advised the commanding officers and sergeant where he was housed that he had received threats from another inmate. (*Id.* ¶ 15.) The officers and sergeant assured Thomas they would change his cell but never did. (*Id.*) Thomas was concerned by these threats because the original source of his PTSD was from an attack by an armed individual. (*Id.*) A few months later on January 5, 2016, an inmate hit Plaintiff in the mouth, unprovoked, causing Plaintiff to suffer a wound to his lip and a dislocated shoulder. (*Id.*) Between October 14, 2015 and January 5, 2016 and beyond, Plaintiff suffered increased anxiety because of the threat to his safety. (*Id.* ¶ 16.)

## LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 566 U.S. 662, 678 (2009). The factual allegations "must be enough to raise a right to relief above the speculative level." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (quoting *Twombly*, 550 U.S. at 555). At the 12(b)(6) stage, the Court construes the complaint in the light most favorable to the nonmoving party, accepts all well-pleaded facts as true, and draws all

inferences in his favor. *Heyde*, 633 F.3d at 516. However, "[l]egal conclusions and conclusory allegations merely reciting the elements of the claim are not entitled to this presumption of truth." *McCauley*, 671 F.3d at 616 (citing *Iqbal*, 566 U.S. at 678).

## DISCUSSION

Thomas's Amended Complaint alleges multiple claims against Sheriff Dart and unknown correctional officers. Defendants Dart and Cook County now move to dismiss the claims against them under Federal Rule of Civil Procedure 12(b)(6).

### I. Count III Against Sheriff Dart – Violations of the ADA and Rehabilitation Act

Count III of the Amended Complaint alleges claims for violations of the ADA and Section 504 of the Rehabilitation Act against Sheriff Dart based on two issues: (1) Defendants' denying Thomas access to counseling and medical services while he was in solitary confinement and afterward while he was in a maximum security dorm, and (2) Dart's failure to have "guidelines to protect the plaintiff from other inmates after the plaintiff warned them on October 14, 2015, that his safety was at risk thereby exacerbating his ongoing bouts with PTSD and depression." (Dkt. 56 ¶¶ 25-26.)

To establish a violation of Title II of the ADA, Thomas must show that (1) he is a qualified individual with a disability, (2) a public entity denied him the benefits of its services, programs, or activities or otherwise subjected him to discrimination, and (3) the denial or discrimination occurred "by reason of" his disability. *Wagoner v. Lemmon*, 778 F.3d 586, 592 (7th Cir. 2015). "Refusing to make reasonable accommodations is tantamount to denying access." *Jaros v. Ill. Dep't of Corr.*, 684 F.3d 667, 672 (7th Cir. 2012).

In his original complaint, Thomas's ADA and Rehabilitation Act claims against Sheriff Dart were based solely on his time in solitary confinement. *Thomas*, 2018 WL 4016315, at *3-5.

The Court dismissed those claims because Thomas failed to meet the second and third prongs—*i.e*, he "fail[ed] to allege he was denied the benefit of any service, program or activity, let alone that he was denied such benefit because he was placed in solitary confinement without accommodation for his PTSD." *Id.* at *4.

Defendants do not contest that Thomas has now met the second prong. Nor could they—the Amended Complaint alleges that Thomas was placed in solitary confinement without accommodation for his PTSD and that while there, he was denied access to "any counseling or medical attention that would have helped his PTSD" and "as a result, [his] condition was exacerbated." (Dkt. 56 ¶¶ 17, 26.) Thomas also alleges that he continued to be denied counseling after he was removed from solitary confinement and placed into a maximum-security dorm. (*Id.* ¶ 18.) The Supreme Court has defined "services, programs or activities" to include "recreational, medical, educational, and vocational prison programs." *Simmons v. Godinez*, No. 16 C 4501, 2017 WL 3568408, at *6 (N.D. Ill. Aug. 16, 2017) (citing *Penn. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210 (1998)); *see also, e.g.*, *Corbin v. Indiana*, No. 3:16-CV-602-PPS/MGG, 2018 WL 1920711, at *3 (N.D. Ind. Apr. 23, 2018) (claim that plaintiff "was denied basic psychological care and services while he was housed in solitary confinement and that other inmates were afforded such services" plausibly alleged violation of the ADA). Thomas has sufficiently alleged that Defendants denied him the benefits of its services, programs, or activities.

As for the third prong, that the denial of services or discrimination occurred "by reason of" Thomas's disability, Defendants argue that the Amended Complaint still fails. According to Defendants, Thomas must allege that he was both placed in solitary confinement and then denied counseling and medical treatment *because* he is disabled. (Dkt. 58 at 8-9; Dkt. 74 at 3-4.) As an initial matter, Defendants seem not to have noticed that Thomas's allegations that he was denied

5

access to counseling and medical services are no longer limited to his time in solitary confinement. (*See* Dkt. 56 ¶ 18.) Regardless, Defendants urge the Court to adopt an overly restrictive reading of the law. "[I]t is possible to demonstrate discrimination on the basis of disability by a defendant's refusal to make a reasonable accommodation." *Washington v. Ind. High Sch. Athletic Ass'n, Inc.*, 181 F.3d 840, 848 (7th Cir. 1999). A plaintiff can establish a Title II claim under the ADA "by evidence that (1) the defendant intentionally acted on the basis of the disability, (2) the defendant refused to provide a reasonable modification, or (3) the defendant's rule disproportionally impacts disabled people." *Wis. Cmty. Servs., Inc. v. City of Milwaukee*, 465 F.3d 737, 753 (7th Cir. 2006). Here, Thomas has alleged that he has PTSD and that Defendants failed to reasonably accommodate him by denying him "access to the medical services and counseling that might have helped him cope with his condition." (Dkt. 70 at 3; Dkt. 56 ¶¶ 17, 26.) That is enough at this stage.[2] *See, e.g.*, *Estate of Robey by Robey v. City of Chicago*, No. 17 CV 2378, 2018 WL 688316 at \*6 (N.D. Ill. Feb. 2, 2018); *Boston v. Dart*, No. 14 CV 8680, 2015 WL 4638044 at \*2-3 (N.D. Ill. Aug. 4, 2015); *Corbin*, 2018 WL 1920711, at \*3-5.

As for his Rehabilitation Act claim, Thomas has failed, once again, to allege that the relevant public entity accepts federal funds. The Court already warned Thomas once that his failure to make that allegation in the original complaint may be grounds for dismissal. *Thomas*, 2018 WL 4016315, at \*5. Because Thomas has failed to do so again, despite the Court's explicit instruction, his Rehabilitation Act claim is dismissed. *See, e.g.*, *Bramlett v. Dart*, No. 14 C 5939,

---

[2] The ADA and Rehabilitation Act claims against Sheriff Dart in the Amended Complaint include a reference to Defendants' lack of guidelines to protect Thomas from other detainees after he warned Defendants' that his safety was at risk, which Thomas alleges made his "ongoing bouts" with PTSD and depression worse. (Dkt. 56 ¶ 26.) Thomas makes no attempt to allege that the lack of guidelines, or the lack of protection itself, amount to a denial of public benefits, services, or programs for purposes of Title II of the ADA. Nor does Thomas mention this aspect of his ADA and Rehabilitation Act claims in his brief opposing Defendants' motion to dismiss. Though Thomas's ADA claim against Dart survives this motion to dismiss, he may not proceed on the "lack of guidelines" or "lack of protection" theories mentioned in passing in the Amended Complaint.

2015 WL 4148711, at *3 (N.D. Ill. July 9, 2015) (recognizing that failure to allege that Defendants Cook County and Sheriff Dart received federal funds "may provide a basis for dismissing the Rehab Act claim"); *Garfield v. Cook Cty.*, No. 08 C 6657, 2009 WL 4015553, at *1 (N.D. Ill. Nov. 19, 2009) (dismissing Rehabilitation Act claim against Cook County where plaintiff "ma[de] no mention of or allusion to federal funding of any sort").

## II.  Count IV – Section 1983 Against Sheriff Dart

To state a claim under Section 1983, Thomas must allege that he was deprived of a constitutional or statutory right and that the deprivation was caused by a person or persons acting under color of state law. *Kramer v. Vill. of N. Fond du Lac*, 384 F.3d 856, 861 (7th Cir. 2004). A Section 1983 claim against a government employee in his official capacity is treated as a claim against the government entity for which he works—here, Cook County. *See Grieveson v. Anderson*, 538 F.3d 763, 771 (7th Cir. 2008). The County cannot be liable under Section 1983 unless the alleged unconstitutional act is caused by: "(1) an official policy adopted and promulgated by its officers; (2) a governmental practice or custom that, although not officially authorized, is widespread and well settled; or (3) an official with final policy-making authority." *Thomas v. Cook Cty. Sheriff's Dep't*, 604 F.3d 293, 303 (7th Cir. 2010) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978)).

Thomas is proceeding under a "widespread practice" theory. (Dkt. 70 at 1-2.) To prevail on a widespread-practice claim, Thomas must show that the County engaged in a practice "so permanent and well settled as to constitute a custom or usage with the force of law." *Wragg v. Vill. of Thornton*, 604 F.3d 464, 467 (7th Cir. 2010). Thomas's original Section 1983 claim against Sheriff Dart, also based on a widespread-practice theory, was dismissed because it was based solely on one incident in which Thomas was housed in a cell lacking running water. *Thomas*, 2018

7

WL 4016315, at *6. The Court found that Thomas had "fail[ed] to identify any other incident in which he or another inmate was placed in an uninhabitable solitary confinement cell," and that his assertions in his response brief that Sheriff Dart had used such cells "for years," or that they were in "constant use," were conclusory and lacked factual support. *Id.*

Though Thomas did not plead any new facts in the Amended Complaint to support his Section 1983 claim against Sheriff Dart, he did clarify that some of the seemingly unrelated sets of facts in the original complaint now form the basis of his widespread-practice claim. *See id.* at *7; *see also* Dkt. 56 at ¶¶ 27-28. Specifically, Thomas now alleges that Dart engaged in the practice of failing to provide habitable cells for detainees. Dkt. 56 ¶ 28. Thomas cites three separate incidents to support this claim—one in which his cell was not properly heated, another in which his cell lacked a mattress and he had to sleep on the floor for five nights,[3] and a third in which his solitary confinement cell lacked running water. *Id.*; *see also* Dkt. 70 at 1-2.

Defendants first take issue with the fact that the Court's previous order dismissing the original complaint instructed Thomas that he could not proceed on the three seemingly distinct sets of facts alleged because "none of the[] sets of facts is related to another." *Thomas*, 2018 WL 4016315, at *7. However, the original complaint did not include a claim that the three distinct sets of facts supported Thomas's widespread-practice claim. The Amended Complaint does. Still, Defendants insist that because the Amended Complaint largely focuses on the third set of facts, Thomas has therefore abandoned the first two sets and his widespread-practice claim must be analyzed as a "single-incident" theory related solely to the cell lacking running water. *See* Dkt. 58

---

[3] Thomas does not actually allege in the Amended Complaint that his cell lacked a mattress—he alleges only that he was "forced to sleep on the cell floor." (Dkt. 56 ¶ 14.) His brief opposing the motion to dismiss clarifies that he was forced to sleep on the floor because his cell did not have a mattress. (Dkt. 70 at 1-2.) This additional fact is sufficiently consistent with the pleadings for the Court to consider it. *See Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012) (the Court considers materials or elaborations disclosed for the first time in a response brief only "so long as the new elaborations are consistent with the pleadings").

at 7-8; Dkt. 70 at 1-3. Defendants' argument is unavailing.[4] The Amended Complaint clearly alleges that Thomas brings his Section 1983 claim based on the three sets of facts identified above and the Court will analyze whether those three sets of facts adequately state a widespread-practice claim under Section 1983.

Even considering the three separate incidents Thomas alleges, his Section 1983 claim fails because he has not shown that the County engaged in a practice "so permanent and well settled as to constitute a custom or usage with the force of law." *See Wragg*, 604 F.3d at 467. First, Thomas has failed to allege that the uninhabitable cells were in that condition before or after he was housed in them or that any other detainees were subjected to the uninhabitable conditions. Like last time, Thomas argues in his brief that the uninhabitable cells were used "over and over again" and "were not exclusively used by the plaintiff," and that the inference to be drawn is that the cells were thus "uninhabitable each time another inmate used them." (Dkt. 70 at 2.) Regardless of whether that is a reasonable inference or not, Thomas simply has not alleged that the uninhabitable cells were used "over and over again" or that they were used by other detainees. The Court cannot make inferences based on facts not alleged. *See also Thomas*, 2018 WL 4016315 at *6. Thomas also argues that because he was placed in each cell at a different period of time, the inference to be drawn is that "these cells were uninhabitable over a long period of time." (Dkt. 70 at 2.) The fact that Thomas was placed in the three uninhabitable cells at different periods of time is properly alleged, but the inference Thomas asks the Court to make is not a reasonable one. Thomas's allegations that Cell A was uninhabitable on Date A, Cell B was uninhabitable on Date B, and Cell

---

[4] Defendants' reliance on *Wheeler v. Wexford Health Servs., Inc.*, 689 F.3d 680, 683 (7th Cir 2012) is equally misplaced. Defendants cite *Wheeler* for the proposition that Thomas has improperly joined in the same suit multiple claims that do not arise from the same transaction. (Dkt. 74 at 2.) But as *Wheeler* makes clear, joinder of multiple, unrelated claims is permissible against a single defendant. 689 F.3d at 683 ("a plaintiff may put in one complaint every claim of any kind against a single defendant"). Here, the claims Defendants seek to dismiss are all brought against a single defendant—Sheriff Dart. Even if that were not the case, Thomas's claims are not unrelated—they all underlie his widespread-practice claim and thus "aris[e] from the same . . . series of related transactions." *See id.*

C was uninhabitable on Date C does not support the inference that any of those cells were uninhabitable on *different* dates. The only conclusion to be drawn from those allegations is that Thomas was housed in three different uninhabitable cells on three different dates. Thomas has not alleged any facts that would allow the Court to draw reasonable inferences about the conditions of those cells on dates Thomas was not housed in them.

The Court must then consider Thomas's three alleged incidents as isolated ones, not persisting across time or affecting any other detainees. Three such isolated incidents do not rise to the level of being "so permanent and well settled" as to support a widespread-practice claim. *See Wragg*, 604 F.3d at 467; *see also, e.g.*, *Grieveson v. Anderson*, 538 F.3d 763, 774 (7th Cir. 2008) (holding that four instances affecting only the plaintiff were not sufficient to establish widespread practice and noting that "it is necessarily more difficult for a plaintiff to demonstrate an official policy or custom based only on his own experience because what is needed is evidence that there is a true municipal policy at issue, not a random event") (quotation omitted); *Estate of Moreland v. Dieter*, 395 F.3d 747, 759-60 (7th Cir. 2005) (three incidents of improper pepper-spraying not sufficient to establish widespread practice). Perhaps if Thomas had alleged that other detainees were subjected to the same uninhabitable conditions he was, or that he was housed in the same uninhabitable cell on multiple occasions, which could give rise to that reasonable inference, his claim could proceed. But as it stands, three isolated incidents do not establish a practice "so permanent and well settled as to constitute a custom or usage with the force of law." *See Wragg*, 604 F.3d at 467. Thomas's Section 1983 claim against Sheriff Dart is dismissed.

## CONCLUSION

Defendants' motion to dismiss [Dkt. 58] is granted as to Thomas's Rehabilitation Act and Section 1983 claims against Sheriff Dart, and denied as to the ADA claim against Sheriff Dart. Thomas may proceed on his ADA claim within the contours stated in this Order.

_____
Hon. Virginia M. Kendall
United States District Judge

Date: April 30, 2019