# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

MARVIN THOMAS,

Plaintiff,

v.

COOK COUNTY SHERIF THOMAS
DART, *et al*,

Defendants.

Case No. 17-cv-4233

Judge Mary M. Rowland

## MEMORANDUM OPINION AND ORDER

Plaintiff Marvin Thomas alleges in his Fourth Amended Complaint that the Defendant, Cook County Sheriff Thomas Dart, violated his rights under the Americans with Disabilities Act ("ADA") by depriving him of mental health care while he was held in administrative segregation during January of 2016.[1] (Dkt. 110). The parties have filed cross-motions for summary judgment. For the reasons stated herein, Plaintiff's motion (Dkt. 173) is denied and Defendant's motion (Dkt. 174) is granted.

## I. Legal Standard

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine dispute as to any material fact exists if "the evidence is such

---

[1] Additional claims and Defendants were previously dismissed. (Dkts. 76 and 154). Sheriff Dart is being sued in his official capacity. (Dkt. 173, ¶ 5).

that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court "consider[s] all of the evidence in the record in the light most favorable to the non-moving party, and [ ] draw[s] all reasonable inferences from that evidence in favor of the party opposing summary judgment." *Skiba v. Ill. Cent. R.R. Co.*, 884 F.3d 708, 717 (7th Cir. 2018) (internal citation and quotations omitted).

"The ordinary standards for summary judgment remain unchanged on cross-motions for summary judgment: [courts] construe all facts and inferences arising from them in favor of the party against whom the motion under consideration is made." *Blow v. Bijora, Inc.*, 855 F.3d 793, 797 (7th Cir. 2017) (citations omitted). To do so, the Court addresses the motions separately. *See Marcatante v. City of Chi.*, 657 F.3d 433, 439 (7th Cir. 2011); *see also Kreg Therapeutics, Inc. v. VitalGo, Inc.*, 919 F.3d 405, 416 (7th Cir. 2019) ("Each cross movant for summary judgment bears a respective burden to show no issue of material fact with respect to the claim.").

## II. Background

The facts in this section come from the parties' Rule 56.1 statements of material facts and the relevant exhibits attached thereto, and are undisputed unless otherwise noted. Marvin Thomas developed post-traumatic stress disorder ("PTSD") after he was beaten and stabbed in a nightclub while serving in the United States Airforce in 1987. (Dkt. 176, Ex. B, 22:18–23:24). He experienced nightmares, anxiety, and flashbacks after this incident, and received his PTSD diagnosis from a Veterans

Administration ("VA") hospital in 2001 or 2002.[2] (*Id*. at 23:20 and 24:4). He was diagnosed with depression in 2009 and started taking a variety of psychiatric medications for both conditions. (*Id*. at 25:13–27:16).

On September 1, 2015, Thomas was incarcerated in Cook County Jail for driving under the influence. (Dkt. 176, Ex. A). During his intake interview he informed a jail employee that he had PTSD. (Dkt. 176, Ex. B, 37:14–21). His intake report does not reflect this information, although it does indicate that he has a history of receiving counseling for a variety of mental health issues. (Dkt. 176, Ex. E, 2). At some point a note was made in his medical charts indicating that he had PTSD, and that note was automatically populated throughout his records. (Dkt. 176, Ex. C, 20:7–15).

At the beginning of his incarceration Thomas informed a nurse that he was not receiving psychiatric or pain medications and wanted to be seen by a doctor.[3] (Dkt. 176, Ex. B, 38:4–24; 40: 7–24). The nurse told Thomas to complete and submit a request for medical care, which he did. *Id*. On September 7, 2015, the jail pharmacy filled prescriptions for a variety of medications including Hydroxyzine, which is used to treat anxiety. (Dkt. 176, Ex. E, 31). On September 16, 2015, after approximately

---

[2] The parties disagree about when (and indeed whether) Thomas received this PTSD diagnosis, but the Court need not delve into his medical history, since "Defendants do not contest at this stage that Plaintiff qualifies as disabled under the ADA due to PTSD." (Dkt. 175 at 6).

[3] Thomas testified he saw a doctor for the first time approximately one month after he was incarcerated, (Dkt. 176, Ex. B, 39:6), and a mental health specialist approximately two months after he was incarcerated. (*Id*. at 38:18). His medical records establish he saw a nurse on September 4, 2015, three days after he was incarcerated, (Dkt. 176, Ex. E, 66), and saw a psychiatrist on September 16th, fifteen days after he was incarcerated. (Dkt. 176, Ex. E, 8). By that time, he had been prescribed various medications. (Dkt. 176, Ex. E, 31).

two weeks of incarceration, Thomas saw a psychiatrist, Dr. Bharti Marri. (Dkt. 176, Ex. E, 8). Dr. Marri noted that he had PTSD and depression and prescribed him Zoloft and Sertraline for these mental health issues, writing that he was "starting [Thomas] back on meds." *Id.* On September 29, 2015, Thomas saw Dr. Marri again about a rash he had developed while taking these psychiatric medications. (Dkt. 176, Ex. E, 13). Dr. Marri noted that he was "not in psychological distress" and was "aware of how to access mental health services if needed." (*Id.* at 14).[4] The Zoloft prescription was discontinued but he was prescribed Prozac, and he was "referred to psychiatry to address his medication concerns." (*Id.* at 19). A few weeks later on October 16, 2015, a different psychiatrist, Dr. Andrea Ward, saw Thomas. (*Id.* at 9). She noted that he would continue to receive Prozac. *Id.* On December 2, 2015, Thomas saw a different mental health clinician to address his trouble sleeping. (*Id.* at 20). At a follow-up appointment with Dr. Ward on December 30, 2015, his Prozac prescription was renewed. (*Id.* at 9).

On January 5, 2016, Thomas was hit in the mouth by another inmate and required five stitches. (Dkt. 176, Ex. B, 45:22–23). In the ensuing struggle he dislocated his shoulder and was taken to Cermak hospital for treatment. (*Id.* at 47:18–19; 48:19–24). He also saw jail medical care providers on January 5th, who noted Thomas had been seen by a psychiatrist and was taking his medication as

---

[4] By the time Thomas was placed in administrative segregation, he had filed at least nineteen requests for medical attention, primarily requesting pain medication. (Dkt. 176, Ex. D at 15, 18–19, 23, 26 & Ex. E, 34, 38–39, 43, 45, 50–63).

prescribed. (Dkt. 176, Ex. E, 23). After the fight Thomas was medically cleared[5] and placed in disciplinary segregation.[6] (Dkt. 176, Ex. B, 49:7; Ex. E at 23). This period of confinement lasted from January 5, 2016 through January 14, 2016. (Dkt. 176, Ex. F).

Once in segregation, Thomas told staff that he had PTSD and needed medication that he was not receiving. (Dkt. 176, Ex. B, 49:24–50:1; 56:22). On January 6th, after one day in segregation, a clinician visited Thomas. (Dkt. 176, Ex. E, 79). Thomas requested a "med refill," though it is not clear whether this was referring to his psychiatric medications or his pain medications. (*Id*. at 80). He also complained of pain and depression. *Id*. On January 8, 2016, *after three days of segregation,* medical staff saw him and reported that *he did not complain of any health or medication issues.* (Dkt. 173, Ex. 7, 2). On January 10, 2016 Thomas wrote and dated a Health Service Request Form (HSRF) seeking pain medication for his back. (Dkt. 176, Ex. E, 61). It was collected on January 12, 2016, two days later. *Id*. That same day a clinician noted in Thomas' chart that he had an unspecified complaint about his "medication." (Dkt. 173, Ex. 8, 1). That clinician also noted "HSRF" on his medical chart, which means he either provided Thomas with a blank

---

[5] Thomas argues that he was not medically evaluated before being placed in segregation, Dr. Ward of the Cook County Jail testified that she *did not know* whether "care was taken to determine whether or not ten days of solitary confinement would be harmful to the plaintiff." (Dkt. 176, Ex. C, 51:3–12). But the medical records establish that Thomas was given a comprehensive medical evaluation, including a question-based mental health evaluation, before he was place in segregation. (Dkt. 176, Ex. E, 24).

[6] The parties refer to both "solitary confinement" and "segregation." Thomas had one cellmate and was permitted to exercise in the recreation room for a brief period each day. (Dkt. 176, Ex. B, 50:10).

HSRF or collected the January 10th HSRF. (Dkt. 176, Ex. E, 61). Because the January 10th HSRF requesting pain medication was collected on January 12th, and no other HSRFs were submitted during his time in segregation,[7] the Court assumes the latter. *Id*. This means that Thomas' documented January 12th medication complaint had to do with pain medication not psychiatric medication. No reasonable jury could find otherwise. In any case, within three days of being placed in segregation Thomas was receiving his psychiatric medication. (Dkt. 176, Ex. B, 60:14–20; Dkt. 173, Ex. 7, 2).

Thomas says that at some point while in segregation he asked to speak to a counselor. (*Id*. at 52:20–53:22). He says that he completed three requests for counseling, but the jail has no record of these written requests. By his own admission, Thomas wanted to speak to a counselor about receiving his psychiatric medications. (*Id*. at 41:10–42). But the record indicates those medications were provided to him (without a new prescription from a counselor) within the first few days of segregation. (*Id*. at 60:14–20).

Four days after returning to the general population, Thomas saw a registered nurse on January 18, 2016, to address his ongoing shoulder pain and a rash. (Dkt. 176, Ex. E, 73–78). He did not mention an ongoing need for psychiatric medication or counseling. *Id*.

Thomas remained incarcerated at Cook County Jail until January 29, 2016, when he was transferred to Stateville Correctional Facility and discharged soon after.

---

[7] Thomas filed various written requests while in segregation. On January 7, 2016, he filed a grievance complaining that guards had failed to protect him from his assailant. (Dkt. 176, Ex. D, 9). He also completed a grievance about possessions he had left under his bunk bed. (Dkt. 176, Ex. D, 1).

Due to his shoulder injury (and a subsequent surgery), his PTSD symptoms, and other ailments, Thomas was placed on full disability benefits by doctors at the VA after his release from Cook County Jail. (Dkt. 176, Ex. F, 9).

## III. Analysis

### A. Plaintiff's Motion for Summary Judgment

Plaintiff argues that while he was in segregation, he was denied accommodations for his disability. In support of this proposition he says that he was "not examined about the effects of the attack [by a fellow inmate] on his PTSD" before he was placed in segregation. (Dkt. 173 at 3). Plaintiff also argues that he "was denied access to any counseling or medical attention that would have helped with his PTSD" while in segregation. *Id.*

Much of the Plaintiff's argument is contradicted by the factual record. He was evaluated by a mental health clinician before being placed in segregation, and he concedes that this clinician asked him questions about his mental health that were "general in nature to determine whether or not [he] had any immediate mental health needs," (Dkt. 173 at 3), as well as more specific questions such as whether he was having "suicidal or homicidal ideations, and whether or not he had any auditory or visual hallucinations," among other things. (Dkt. 173 at 4). Thomas also concedes that he was receiving his psychiatric medication for the majority of his time in segregation. (Dkt. 176, Ex. B, 60:14–20). The only medication he requested during his time in segregation was pain medication. (Dkt. 176, Ex. E, 61). Although Thomas verbally requested counseling, it was for the express purpose of locating his

psychiatric medications (which he promptly received). Moreover, he did not make any such request through the appropriate written channels, with which he was by then well acquainted. (Dkt. 176, Ex. E). To the extent Thomas was denied any psychiatric care while he was in segregation (and it is not clear that he was) these are not denials of the sort that give rise to a viable ADA claim.[8]

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Prisons and jails are public entities, and medical treatment is a "service" under the ADA. *Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210 (1998) ("prisons provide inmates with [. . .] medical 'services,' [. . .] which at least theoretically 'benefit' the prisoners (and any of which disabled prisoners could be 'excluded from participation in').").

Defendant cites *Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir. 1996), for the proposition that "the [ADA] would not be violated by a prison's simply failing to attend to the medical needs of its disabled prisoners" because what the plaintiff was really complaining about was "incompetent treatment of his [disability]" and "[t]he ADA does not create a remedy for medical malpractice." *Id.* This case is dated, and Thomas correctly points out that since it was decided courts in the Northern District have recognized an ADA claim where a jail or prison failed to provide an inmate with medical attention. But the parties' caselaw is easily reconcilable: outright denial of

---

[8] The Court does not reach the Defendant's other arguments in favor of denying Plaintiff's motion for summary judgment.

medical care is cognizable under the ADA, while provision of incompetent medical care is not. *See, e.g., Paine ex re. Eilman v. Johnson*, No. 06 C 3173, 2010 WL 785397, at \*8 (N.D. Ill. Feb. 26, 2010) ("This is not a case in which an ADA claim is brought as a disguised medical malpractice claim. Once an arrestee with a disability is in custody, the police have a duty to reasonably accommodate the arrestee's disability [and it was] undisputed that [the plaintiff] was not taken for *any* psychiatric evaluation or potential treatment prior to her release from custody.") (emphasis added); *see also Earl v. Espejo*, No. 17 C 195, 2017 WL 3704826, at \*2 (N.D. Ill. Aug. 28, 2017) ("at least *some* medical attention would have been a reasonable accommodation during [plaintiff's] detention") (emphasis added). These cases, cited by the Plaintiff himself, demonstrate that although outright denials of medical care are actionable under the ADA, provision of improper medical care is not. *See also, Wagoner v. Lemmon*, 778 F.3d 586, 592–93 (7th Cir. 2015) (complaint about "the condition of [plaintiff's] wheelchair and its repair and IDOC's improper transportation of [plaintiff] in that ill-equipped van [. . .] are a poor fit for the [ADA]" because plaintiff did not allege that "the failure to provide him with an adequate wheelchair backrest or a wheelchair-ready van (however inappropriate those failings might otherwise have been) *denied him access to any services or programs*.") (emphasis added); *Corbin v. Indiana*, No. 16-CV-602-PPS/MGG, 2018 WL 1920711, at \*3 (N.D. Ind. Apr. 23, 2018) (claim that plaintiff "was *denied* basic psychological care and services while he was housed in solitary confinement and that other inmates [without disabilities] were afforded such services" plausibly alleged violation of the

ADA) (emphasis added); *Estate of Crandall v. Godinez*, No. 14-CV-1401, 2015 WL 1539017, at *7 (C.D. Ill. Mar. 31, 2015) (claim "that [plaintiff, a mentally ill inmate who committed suicide] was not properly treated for his mental illness—is distinctly different from a claim that [plaintiff] was *denied access* to medical services, and is not cognizable under the ADA.") (emphasis added).

Thomas's ADA claims survived Dart's motion to dismiss because he alleged that he was denied *all* psychiatric care while in segregation. (Dkt. 76 at 5). The uncontested facts establish that Thomas had access to psychiatric care during this time. He received his medication, he was checked on regularly by clinicians, and he was given ample opportunity to request additional services. His recent suggestion that the jail could have *better* accommodated his disability by giving him "daily examinations of his PTSD symptoms" (Dkt. 173 at 4) is a complaint about the efficacy of his medical care not the denial of medical care, and therefore does not state a claim under the ADA.[9] No reasonable jury could find that Plaintiff's rights to a reasonable accommodation under the ADA were violated. Plaintiff's motion for summary judgment is denied.

---

[9] Thomas also argues that he should have received "a shorter time in solitary confinement" as a reasonable accommodation. Thomas never requested such an accommodation. Plaintiff argues, in reliance upon a case called *Access Living of Metro. Chi. v. Uber Techs., Inc.*, that "[a] request [for an accommodation] is not necessary when an entity is already on notice about the need for modification." 351 F. Supp. 3d 1141, 1157 (N.D. Ill. 2018) aff'd, 958 F.3d 604 (7th Cir. 2020). In *Access Living*, the district court held that because the parties had already met to discuss demands, "Uber [the rideshare company] already knew that a reasonable modification was necessary to make its services accessible to plaintiffs and chose not to do so, requiring an express request from plaintiffs would serve no purpose." *Id.* at 1158. This case is inapposite. Despite all the grievances and HSRFs Thomas submitted, he never requested a shorter period in segregation due to his PTSD.

**B. Defendant's Motion for Summary Judgment**

Defendant Dart moves for summary judgment on the grounds that Thomas cannot make out the *prima facie* elements of an ADA claim. To do so, Thomas must show (1) he is a qualified individual with a disability; (2) he was denied the benefits of a service, program, or activity of a public entity; and (3) such denial was by reason of his disability. *Wagoner v. Lemmon*, 778 F.3d 586, 592 (7th Cir. 2015). The parties agree Thomas is a qualified individual with a disability. Dart argues that Thomas cannot show he was denied the benefits of a service, program, or activity, and that he cannot show any such denial was by reason of his disability. For the reasons stated above, the Court finds that Thomas cannot demonstrate that he was denied the benefits of a service, program, or activity. The Court therefore need not reach the third element, causation.

## IV. Conclusion

Plaintiff's motion for summary judgment (Dkt. 173) is denied and Defendant's motion for summary judgment (Dkt. 174) is granted. The Clerk is directed to enter judgment in favor of Defendant Cook County Sheriff Thomas Dart. Civil case terminated.

E N T E R:

Dated: July 14, 2021

_____
MARY M. ROWLAND
United States District Judge